IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Gina C.,[1]

  Plaintiff,              Civ. No. 6:18-cv-01172-MC

  v.                 OPINION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

  Defendant.
_____

MCSHANE, Judge:

  On September 5, 2014, Plaintiff filed an application for benefits, alleging disability as of January 28, 2003. At the hearing, the administrative law judge ("ALJ") amended the alleged onset date to May 17, 2013. Tr. 23.[2] After the hearing, the ALJ determined Plaintiff was not disabled under the Social Security Act. Tr. 26. Plaintiff argues the ALJ erred in rejecting her subjective symptom testimony, in rejecting the treating medical source opinion of Dr. Huth, and in rejecting lay witness testimony. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.
[2] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

1 – OPINION AND ORDER

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520 & 416.920 (2012). The initial burden of proof rests upon the claimant to meet the first four steps. If the claimant satisfies his burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner must show that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id*. If the Commissioner fails to meet this burden, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

In a disability function report, Plaintiff alleged she was incapable of lifting more than five pounds. Tr. 220. Plaintiff wrote that she cannot walk or run "without wanting to pass out." Tr. 221. Plaintiff wrote that she cannot walk more than five minutes without needing to rest. Tr. 273. Plaintiff stated she was able to watch television and use the computer "all day." Tr. 224.

The ALJ determined that Plaintiff had the following severe impairments: obesity, nonischemic cardiomyopathy, Grave's disease, congestive heart failure, degenerative disc disease, and diabetes mellitus. Tr. 26. At step 4, the ALJ determined that Plaintiff:

> has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except the claimant can occasionally balance, stoop, kneel, crouch, and climb ramps and stairs. The claimant can never crawl and climb ladders, ropes, and scaffolds. The claimant can occasionally reach overhead with the left upper extremity. The claimant can have no exposure to extreme heat, extreme cold, extreme vibrations, and hazards, such as machinery and unprotected heights.

Tr. 27.

As noted, Plaintiff argues the ALJ erred in rejecting her subjective symptom testimony as to her limitations, in rejecting the treating medical source opinion of Dr. Huth, and in rejecting the lay witness testimony. I address each argument in turn.

1. **The ALJ's Adverse Credibility Determination**

The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir.1989)). Still, the ALJ must provide "specific, clear and convincing reasons" to discredit subjective symptoms testimony. *Vasquez v. Astrue*, 572, F.3d 586, 591 (9th Cir. 2009) (quoting *Smolen v. Charter*, 80 F.3d 1273, 1282 (9th Cir. 1996)). In formulating these reasons,

3 – OPINION AND ORDER

the ALJ "may consider a range of factors in assessing credibility." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. Aug. 18, 2014). These factors can include "ordinary techniques of credibility evaluation," *id.*, as well as:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter v. Astrue,* 504 F.3d 1028, 1040 (9th Cir.2007).

The ALJ in this case supported her credibility determination with references to several of the above factors:

> First, the claimant's allegations are inconsistent with her admitted activities, which show that she is otherwise quite functional. The undersigned notes that the record repeatedly details the claimant cared for small children - her four year old daughter and two year old granddaughter. In addition, she reported that she cooked and cleaned. In a later function report, the claimant indicated that she cleaned the dishes and washed laundry every day. The undersigned notes that in May 2012, the claimant reported doing well, caring for her brother, and exercising regularly for thirty minutes per day. In August 2016, the claimant reported neck pain associated with moving large objects in her new residence and storage units. Second, the claimant's allegations are inconsistent with treatment notes that suggest that she is functional. The undersigned notes that the record details the claimant's ejection fraction in June 2002, over ten years before her amended alleged onset date, was only 35%. In August 2014, the claimant reported that she was feeling "really good" to treatment providers. Again in December 2014, the claimant reported that she was feeling well. Further, at that time, the claimant reported that her level of activity was stable.

Tr. 31. (internal citations omitted).

The ALJ's reasoning above is supported by substantial evidence in the record. The record demonstrates that Plaintiff was the sole caretaker of her four-year old daughter and her two-year old granddaughter. Tr. 199, 221, 363, 487. This contrasts with Plaintiff's claims of being unable to walk five minutes without resting, Tr. 273, or being incapable of lifting more than five pounds, Tr. 220. Acting as the primary caregiver to small children, in contrast to allegations of

debilitating symptoms or limitations, is a clear and convincing reason for finding a Plaintiff less-than fully credible. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). This is not a case where "there is almost no information in the record about [Plaintiff's] childcare activities[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017). Here, Plaintiff clearly indicated that no one else helps her care for two children under the age of five. Tr. 221. Plaintiff's mother confirmed that no one other than Plaintiff takes care of the children. Tr. 199. Here, the ALJ reasonably inferred that Plaintiff's childcare activities contrasted with her own allegedly severe limitations.

Additionally, the record supports the ALJ's conclusion that Plaintiff's daily activities were inconsistent with her subjective symptom testimony. In particular, the ALJ noted that Plaintiff reported daily exercise in May 2012. Tr. 516. Plaintiff washed dishes and did laundry every day. Tr. 271. Plaintiff cooked for herself and her children. Tr. 221. In August 2016, Plaintiff complained of neck pain from lifting large objects during a move. Tr. 419. Plaintiff stated she had "little help" in moving to a new residence. Tr. 421. The ALJ reasonably concluded these activities were inconsistent with Plaintiff's statements that she cannot walk "without wanting to pass out," Tr. 221, and cannot lift more than five pounds, Tr. 220. An ALJ may point to such a contrast as evidence suggesting a lower level of pain and fewer limitations than alleged. *Rollins*, 261 F.3d at 857.

The medical record also supports the ALJ's credibility determination. In June 2002, ten years before the alleged onset date, Plaintiff's ejection fraction ("EF") was 35%. Tr. 307. This EF value was consistent with the value measured in November 2012. Tr. 299. In December 2014, her EF value was reported as stable and Plaintiff reported feeling well. Tr. 303. In February 2015, Plaintiff reported no shortness of breath while walking. Tr. 388 This report

contrasts starkly with Plaintiff's subjective symptom testimony of being unable to walk five minutes without resting. Tr. 273.

Plaintiff's EF value dipped to 20–25% in November 2015 Tr. 485. However, Plaintiff underwent surgery for an implantable cardioverter-defibrillator the next month. Tr. 399. In August 2016, Plaintiff stated she felt better than she had in the past. Tr. 424. Imaging in November 2016 showed stable mild cardiomyopathy. Tr. 481. Separate medical notes from November 2016 detail a stable EF and that Plaintiff reported feeling pretty good between brief episodes of breathlessness and discomfort. Tr. 486. The ALJ properly supported her credibility determination with substantial evidence from the medical record, and thus this Court "may not engage in second guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

2. **The ALJ's Rejection of Dr. Huth's Opinion**

In December 2016, Dr. Huth—Plaintiff's treating cardiologist—assessed Plaintiff's condition. The ALJ summarized Dr. Huth's opinion: "claimant was unable to work and could sit and stand/walk for less than two hours each. Dr. Huth further opined that the claimant would be off task more than 25% of a day." Tr. 30 (internal citations omitted). The ALJ gave minimal weight to Dr. Huth's opinion, finding it conflicted with his treatment notes as well as Plaintiff's reported activities. Tr. 30–31.

Generally, a treating doctor's opinion is entitled to more weight than an examining doctor's opinion and a reviewing doctor's opinion. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). This is because "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief

hospitalizations." 20 C.F.R. § 404.1527(c)(2). However, when faced with conflicting medical evidence, the ALJ is charged with resolving that conflict. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). When a treating doctor's opinion conflicts with those of examining or reviewing doctors, an ALJ "may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. . . ." *Id.* (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). One such specific and legitimate reason to reject a treating doctor's opinion is if there is an incongruity between it and his medical records. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041.

Substantial evidence supports the ALJ's determination that Dr. Huth's opinion conflicts with his treatment notes. Dr. Huth's treatment notes indicate that in December 2012, "She feels well. She is not having any cardiac symptomatology[.]" Tr. 302. Plaintiff's EF was "stable" and "she is feeling well." Tr. 303. Although Plaintiff's EF was 30%, that "appears quite similar to past tests [in 2002]." Tr. 358. Dr. Huth's notes from August 2014 indicate "She has been feeling really good." Tr. 299. Plaintiff complained of heartburn and a kicking-like sensation in her chest, but "denies clear-cut chest pain or pressure." Tr. 299. Dr. Huth noted Plaintiff "exercises regularly and 30 minutes per day." Tr. 299. In October 2015, Dr. Huth noted:

> She feels great. She is not having any breathlessness. No PND, orthopnea and no dyspnea. She is very compliant with her medications and she feels well. No clinical symptoms at all. She said she is being more active than she has been. She is caring for her young granddaughter under 2.

Tr. 487.

In November 2016, Dr. Huth treated Plaintiff for the last time before providing his opinion. Dr. Huth noted that Plaintiff was stressed due to her mother's medical issues. Tr. 484. Although Plaintiff was evaluated earlier for chest discomfort at an emergency room, those symptoms were related to a cold. Tr. 484. Plaintiff suffered "some more vague symptoms of

7 – OPINION AND ORDER

breathlessness over the past several months, . . . She says when she gets excited or anxious, she is breathless; otherwise, about the same." Tr. 484. Dr. Huth noted: "Decreased left ventricular function, stable. Actually feeling pretty good in between these brief episodes of breathlessness and discomfort." Tr. 486. Only one month later, Dr. Huth opined that Plaintiff was unable to work, and could sit and stand/walk for less than 2 hours each. Tr. 511.

The ALJ reasonably concluded Dr. Huth's treatment notes, outlined above, contrasted with his severe limitations as to Plaintiff's abilities. The ALJ also noted that Dr. Huth's limitations stood in stark contrast with Plaintiff's report of hurting her neck lifting large objects during a move. Tr. 31. As described above, notes from Plaintiff's August 2016 appointment state: "Upper back quite painful now and low back feels just strained from her moving large objects to new residence and into storage units." Tr. 419. The ALJ did not err in giving little weight to Dr. Huth's opinion. *Tommasetti*, 533 F.3d at 1041.

### 3. The ALJ's Rejection of Lay Witness Testimony

The ALJ summarized the lay witness testimony: "[Plaintiff's mother] indicated that the claimant would become short of breath and tired because of her impairments. [Plaintiff's mother] reported that the claimant's impairments affected her sleep. [Plaintiff's mother] attested that the claimant's impairments affected her abilities to lift and walk." Tr. 31 (internal citations omitted).

In discounting lay witness testimony, an ALJ need only give a reason germane to the witness. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). One such germane reason is a conflict between the Plaintiff's daily activities and the lay witness testimony. *Id.* Here, the ALJ gave partial weight to the lay witness testimony, crediting it inasmuch as it matched the residual functional capacity. Tr. 31. The ALJ again pointed to the inconsistency

between the lay witness testimony and Plaintiff's raising two small children alone. Tr. 31.[3] As noted above, this is a clear and convincing reason to discredit Plaintiff's testimony. Providing a clear and convincing reason is more demanding than providing a germane one. *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002). Thus, the ALJ properly discounted the lay witness testimony by pointing to Plaintiff's raising two small children alone.

## CONCLUSION

The ALJ's decision is free of legal error and supported by substantial evidence. The Commissioner's final decision is therefore AFFIRMED.

IT IS SO ORDERED.

DATED this 15th day of October, 2019.

_____/s/ Michael J. McShane_____
Michael McShane
United States District Judge

---

[3] The ALJ also noted that the opinion that Plaintiff's "impairments affected her abilities to lift and walk" was inconsistent with evidence that Plaintiff, with little help, moved several large objects to her new home and storage unit. Tr. 31.